UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALEAF HARRISON,
                                                   **DECISION AND ORDER**
            Petitioner,                   **No. 07-CV-6452T**

   -vs-

JAMES T. CONWAY, SUPERINTENDENT,

            Respondent.

_____

## I. Introduction

*Pro se* Petitioner Caleaf Harrison ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 10, 2002, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of two counts of Burglary in the Second Degree (N.Y. Penal Law ("Penal Law") § 140.25 [2]) and three counts of Petit Larceny (Penal Law § 155.25).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The charges arise from two separate burglaries that occurred, respectively, on February 14, 2002 and April 17, 2002, in the City of Rochester, New York.

**A. The Reeves Road Property**

On February 14, 2002, Petitioner unlawfully entered the home of Marie and Christopher Hildreth located at 487 Reeves Road in Rochester, New York.

Donald Neufeglise ("Neufeglise"), the Hildreths' neighbor, returned home from work at approximately 10:40 a.m. and noticed a red Buick with a little girl in the back seat parked in his driveway. Trial Transcript [T.T.] 232-233. Neufeglise recorded the vehicle's license plate number. He then observed Petitioner walking from the front of the Hildreths' home carrying a radio. T.T. 235-236. Petitioner told Neufeglise that he was returning the radio to the Hildreths, but that they were not home. T.T. 236. Neufeglise later gave police a verbal description of Petitioner and his vehicle, as well as his license plate number. T.T. 266. Neufeglise also picked Petitioner out of a line-up held after police apprehended Petitioner. T.T. 243-244, 423.

When the Hildreths returned home several hours after the incident, they noticed that their sliding glass door was wide open and items inside the home were out of place and unplugged. T.T. 210-211. They also saw fresh footprints in the snow that circled around the outside of the property, and did not match any person authorized to be on their property that day. T.T. 146, 228.

When investigators spoke to Petitioner about the burglary, he initially denied involvement, but later stated that he "couldn't go through this anymore," that he had a girlfriend with three children who was always asking for money, and then started to cry. T.T. 452-454.

**B.  The Pinnacle Road Property**

On April 17, 2002, Petitioner unlawfully entered the home of Elizabeth Flood ("Flood") at 473 Pinnacle Road in the City of Rochester, New York.

On the date of the incident, Flood left her home at approximately 11:20 a.m. and returned at approximately 3:00 p.m. When she returned, Flood noticed that items were unplugged in her home and her 32-inch Sony flat screen television with remote control was missing. T.T. 310-311. The master bathroom window was open and the screen was torn. T.T. 311. Investigators lifted two latent fingerprints from the exterior side of the window frame on the master bathroom window. One print could not be identified due to a lack of characteristics and the other was identified as Petitioner's right thumb. T.T. 402.

At approximately 12:30 p.m. that same day, Petitioner entered a pawnshop in Rochester and tried to sell a 32-inch Sony flat screen television with remote control. T.T. 338, 341. Petitioner brought the television to the pawnshop in the trunk of a red Buick. T.T. 339. The attendant at the pawnshop, Lance Kunzer ("Kunzer"),

verified Petitioner's identification by his New York State Learner's Permit. T.T. 325. Kunzer could not locate the serial number of the television so he opened the back of it to see if the serial number was written on the inside. After Kunzer had done so, Petitioner indicated that he did not want to sell the television because it might be stolen. T.T. 339.

**C. Indictment, Trial and Sentencing**

Petitioner was indicted and charged with four counts of Burglary in the Second Degree and three counts of Petit Larceny.

After a jury trial, Petitioner was found guilty on two counts of Burglary in the Second Degree and three counts of Petit Larceny. Petitioner was sentenced to thirteen years imprisonment on each burglary count to run consecutive to each other and one year to run concurrent for each of the misdemeanors. Sentencing Minutes [S.M.] 9.

**D. Petitioner's Direct Appeal**

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on December 22, 2005. People v. Harrison, 24 A.D.3d 1226 (4th Dept. 2005). The New York Court of Appeals denied Petitioner's leave to appeal. People v. Harrison, 7 N.Y.3d 757 (2006).

### E. The Habeas Petition

On September 17, 2007, Petitioner filed the instant habeas petition, wherein he seeks relief on the following grounds: (1) insufficiency of the evidence/the verdict was against the weight of the evidence; (2) the trial court erred in denying his motion for a mistrial; and (3) harsh and excessive sentence. Petition [Pet.] ¶11, Points 1-3.

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as

determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see

also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

**IV. Petitioner's Claims**

**1. Legally Insufficient Evidence/Weight of the Evidence**

Petitioner asserts that the evidence was not legally sufficient to support his conviction for burglary in the second degree, as charged in connection with the Reeves Road property. He also asserts that the verdict was against the weight of the evidence with respect to both burglary convictions.[1] Pet. ¶11,

---

[1] To the extent that Petitioner argues that the verdict was against the weight of the evidence with respect to both burglary convictions, such a claim is not cognizable on habeas review. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (holding that challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review). A claim that a verdict was against the weight of the evidence derives from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). This portion of Petitioner's claim is, therefore, dismissed.

Point 1. Petitioner raised this claim on direct appeal, and it was rejected on state procedural grounds. Harrison, 24 A.D.3d at 1227. Consequently, the claim is procedurally barred from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at CPL § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review (i.e., Petitioner failed to renew his motion to dismiss the indictment at the close of the People's case). See Harrison, 24 A.D.3d at 1227.

The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). The Appellate Division's reliance on CPL § 470.05(2) is an independent and adequate state ground, barring this Court's review of Petitioner's claim that the evidence was not legally sufficient to support his conviction for burglary in the second degree, as charged in connection with the Reeves Road property.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice attributable thereto," or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice (i.e., that he is actually innocent).

Accordingly, habeas relief is unavailable to Petitioner, and his claim that the evidence was not legally sufficient to support the burglary conviction related to the Reeves Road property is dismissed.

**2. Erroneous Denial of Petitioner's Motion for a Mistrial Premised Upon Prosecutorial Misconduct**

Petitioner contends that the trial court erroneously denied his motion for a mistrial based on the prosecutor's improper comments on summation. Specifically, he argues that the prosecutor's suggestion that "maybe there was a second person" involved in the crimes[2] invited the jury to consider an uncharged theory of guilt, namely accomplice culpability. Pet. ¶11, Point 2.

---

[2] The prosecutor's exact statement is as follows: "[w]as there a second person? Maybe there was." T.T. 588.

-10-

Petitioner raised this claim on direct appeal, and it was rejected on the merits.[3]

A claim of prosecutorial misconduct during summation that does not implicate a specific provision of the Bill of Rights will lie only where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (the comments must be "so prejudicial that they rendered the trial in question fundamentally unfair") (internal quotation marks omitted). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. Bentley, 41 F.3d at 824.

---

[3] The Appellate Division found that, "[t]he court properly denied defendant's motion for a mistrial based on the prosecutor's comment on summation that defendant may have acted in concert with someone in committing one of the burglaries. Although the indictment charged defendant only as a principal, the prosecutor's comment on summation did not change the theory of the prosecution. There is no legal distinction between liability as a principal or criminal culpability as an accomplice." Harrison, 24 A.D.3d at 1227 (internal citations and quotations omitted).

Here, Petitioner was charged in the indictment as a principal. He argues, therefore, that the prosecution's statement improperly invited the jury to consider an uncharged theory of guilt, namely a theory of accomplice culpability. As a result, Petitioner argues that a mistrial was warranted. The Court rejects this contention.

The record reflects that defense counsel objected to the prosecution's suggestion that "maybe a second person" was involved in the crimes and moved for a mistrial. The court denied counsel's motion, sustained the objection, and instructed the jury to disregard the prosecution's statement. T.T. 587-588.

A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation. Here, the prosecutor's comment was a fair response to defense counsel's statement on summation that it was an "impossibility" that Petitioner had entered the Flood home and taken the 32-inch flat screen television by himself. T.T. 559-560. Moreover, even assuming that the prosecutor's statement did improperly invite the jury to consider an uncharged theory of guilt, as Petitioner contends, such conduct does not amount to the kind of "egregious misconduct" that would violate Petitioner's constitutional right to due process of law. See Floyd, 907 F.2d at 353 ("[T]he Supreme Court has instructed federal courts reviewing habeas claims brought by state prisoners and premised upon prosecutorial misconduct in summation to distinguish between ordinary trial error of a

prosecutor and that sort of egregious misconduct . . amount[ing] to a denial of constitutional due process.") (internal quotation marks omitted). Finally, the jury was instructed to disregard the prosecution's statement immediately after it was made, thus avoiding the risk that the jury improperly considered it in reaching its verdict. Accordingly, the Appellate Division properly rejected Petitioner's motion for a mistrial based on this comment.

In sum, the challenged statement in the prosecutor's summation did not deprive Petitioner of a fair trial. The state court's decision rejecting this claim was neither contrary to nor an unreasonable application of federal law. Furthermore, given the plentiful evidence of Petitioner's guilt, even if the statement was improper, it would not warrant the grant of habeas relief because it did not have a substantial and injurious effect or influence on the jury's verdict. See Fry v. Pliler, 551 U.S. 112, 121 (2007). Thus, Petitioner's objections to the summation provide no basis for a writ of habeas corpus, and the claim is dismissed.

## 3. Harsh and Excessive Sentence

In ground three of the petition, Petitioner argues that his sentence was harsh and excessive. Pet. ¶11, Point 3. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Harrison, 24 A.D.3d at 1227. This claim, however, does not present an issue that is cognizable on habeas review.

It is well-settled law that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp 146 (E.D.N.Y. 1988), aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced as a second felony offender to thirteen years for each felony conviction. S.M. 3, 8. This term is within the range prescribed by New York law for burglary in the second degree (a Class C felony) for a second felony offender. See Penal Law § 70.06(3)(b) (for a Class C felony, the term must be at least six years and must not exceed fifteen years).

Accordingly, habeas relief is not available to Petitioner, and the claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

---
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: May 10, 2010
Rochester, New York